UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN CORNIEL, | : | |
| | : | |
| Petitioner, | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| - against - | : | |
| | : | **04 Civ. 2577 (KMW) (RLE)** |
| N.Y.S. DIVISION OF PAROLE, | : | |
| | : | |
| Respondent. | : | |

**To the HONORABLE KIMBA M. WOOD, U.S.D.J.:**

## I. INTRODUCTION

Petitioner, John Corniel ("Corniel"), seeks a writ of habeas corpus[1] pursuant to 28 U.S.C. § 2254. The petition was received by the *Pro Se* Office in this District on April 5, 2004. Corniel was convicted of robbery in the second degree (N.Y. Penal Law § 160.10(1)), and sentenced to a determinate term of eight years. He contends that his incarceration violates the United States Constitution in that he was denied effective assistance of counsel. Petition under 28 U.S.C. § 2254 ("Pet.") ¶ 12. For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

### A.    Factual Background

### 1.    The Crime

On April 30, 1997, Maria Rodriguez, who was fourteen years old at the time, was robbed

---

[1]Corniel was released from Oneida Correctional Facility on October 17, 2003, but remains in "custody" as a consequence of his parole. *See* **Jones v. Cunningham**, 371 U.S. 236, 243 (1963) (parole imposes conditions that sufficiently confine and restrain freedom such that petitioner is "in custody" within the meaning of the habeas statute).

in the elevator of her family's apartment building.  Trial Transcript, April 22, 1998 ("4/22 T. Tr."), at 122-23.  The perpetrators, a man and a woman, removed Rodriguez's jewelry from her body and threatened to kill her.  **Id**. at 124.  Rodriguez went home, and her younger sister called 911. Trial Transcript, April 23, 1998 ("4/23 T. Tr." ), at 38.  When the police responded, Rodriguez described the male perpetrator as a Hispanic man of medium height with "kind of light dark skin."  4/22 T. Tr. at 125-26, 140.  Rodriguez canvassed the area around her family's apartment with a police officer, but was unable to point out the people who robbed her.  **Id**. at 125.  She later selected Corniel's picture from a photographic array.  **Wade** Hearing Transcript, April 7, 1998 (W. Tr.), at 59-62.  On May 27, 1997, Rodriguez viewed a line-up consisting of Corniel and five "fillers."  4/22 T. Tr. at 126-27.  When Rodriguez first viewed the line-up, she began to cry and looked away from the glass, but did not identify Corniel.  **Id**. at 128, 159-60. After a few minutes, the police officers assisting in the line-up took Rodriguez out of the viewing room and brought her to her mother.  **Id**.  After Rodriguez and her mother spoke, she identified Corniel.  **Id**. At 128-29.  A New York County Grand Jury indicted Corniel on charges of robbery in the second degree and burglary in the second degree.  Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Opp'n Mem."), at 2.

## 2.    Pretrial Hearing

On or about September 18, 1997, Corniel retained Lynne Stewart to represent him, and she represented him through trial and sentencing.  **Id**. at 8.  On April 7, 1998, the trial court held a **Wade** [**United States v. Wade**, 388 U.S. 218 (1967)] hearing to determine whether there were grounds to suppress the line-up identification by Rodriguez.  W. Tr., at 2.  At the hearing,

Stewart made a series of arguments in favor of suppression.  **Id**. at 100-04.  First, she argued that there was an inference of suggestiveness in the photo array.  **Id**. at 101.  This argument was based on the fact that the prosecution did not call the police officer who conducted the photographic identification, the photographs themselves were not preserved in any way, and the New York District Attorney's Office had never been in possession of the photograph that Rodriguez selected.  **Id**.  Next, Stewart argued that the line-up identification was compromised, and therefore unreliable, in two ways.  **Id**. at 101-03.  She challenged the makeup of the line-up, which consisted of Corniel, who is Latino, and five "fillers," all of whom were African-American.  **Id**. at 101-02.  Stewart asserted that the identification was suggestive because Rodriguez was told beforehand that the person she had identified in the photographic array would be in the line-up.  **Id**. at 102-03.  Finally, Stewart argued that the identification should be suppressed because Rodriguez was not able to demonstrate that she had an independent source of knowledge on which to base her identification.  **Id**. at 103-04.  Stewart noted that Rodriguez was unsure of the length of time of the robbery and the "exact placements" of the perpetrators during the robbery, and could not demonstrate that she had sufficient opportunity to observe the perpetrators of the crime.  **Id**.

  3.  **The Trial**

During *voir dire*, Stewart questioned the potential jurors about their views on a number of issues central to Corniel's defense.  ***See* Sandoval**/Voir Dire Transcript ("S/VD Tr."), at 170-79. She asked whether they believed that a person's memory could be unreliable, specifically with regard to traumatic events.  **Id**. at 177-78.  Two potential jurors had been victims of crimes

similar to those Corniel had been accused of, and Stewart challenged them about their ability to judge the case before them without being influenced by these past experiences.  **Id**. at 172-74. She also prepared the potential jurors for the likelihood that the victim, Rodriguez, would be very sympathetic, and asked whether the fact that the victim was a young girl would affect their ability to be fair.  **Id**. at 178-79.  Following up on this area, Stewart asked whether any member of the pool had a teenage daughter, and whether that would affect their impartiality.  **Id**. at 179.  After the voir dire, Stewart unsuccessfully challenged for cause one juror, who had been the victim of multiple muggings and could only say he would "try" to be fair.  **Id**. at 184.  Stewart also made eight peremptory challenges to jurors, including the juror whom she attempted to challenge for cause.  **Id**. at 185; 4/22 T. Tr. at 50, 96.

In her opening statement, Stewart emphasized the defense's theory of mistaken identity. 4/22 T. Tr. at 107-10.  She urged the jurors to focus on the details of Rodriguez's testimony, specifically whether she was able to recall the events of the crime, and problems with the line-up. **Id**. at 107-08.  During the prosecution's case, Stewart actively represented Corniel.  When Rodriguez improperly referred to the photographic line-up in her testimony, she moved for a mistrial on Corniel's behalf, but the motion was denied by the trial judge.  **Id**. at 132-34.  She also conducted a thorough cross examination of Rodriguez.  **Id**. at 138-63.  She confronted Rodriguez with prior inconsistent statements she had given at the grand jury and suppression hearings, **id**. at 142-43, 146-49, 152-54, and questioned her extensively on the racial composition of the line-up.  **Id**. at 155-63.  Stewart also had the line-up photograph introduced into evidence to demonstrate that all of the fillers were of a different race than Corniel.  **Id**. at 163.

4

At the conclusion of the State's case, Stewart moved to dismiss both counts, arguing that the prosecution failed to make out a prima facie case.  4/23 T. Tr. at 68-69.  The trial court granted the motion with respect to the burglary count, but denied it as to the robbery count.  **Id**. at 70-71.  In her direct case, Stewart attempted to call a custodian of records from Corniel's bank to testify that Corniel had nearly $4,000 in an account to demonstrate that Corniel lacked a motive to rob Rodriguez of her "two dollar" necklace and other jewelry.  **Id**. at 71.  The prosecution objected to the witness as irrelevant, and the trial judge denied the request, finding that the witness would be collateral.  **Id**. at 71-72.  Stewart did not call any other witnesses.  In her closing, Stewart continued to actively defend Corniel.  Trial Transcript, April 27, 1998 ("4/27 T. Tr."), at 77-88.  Her closing argument focused on the unreliable nature of Rodriguez's memory, her inability to identify Corniel in court, and the lack of evidence connecting Corniel to the crime.  **Id**.  After deliberating for a day, the jury found Corniel guilty of robbery in the second degree.  **Id**. at 141.

### 4.    The Sentencing Hearing

At Corniel's sentencing hearing, Stewart first moved for the verdict to be set aside because it was against the weight of the evidence.  Sentencing Transcript, May 19, 1998 ("S. Tr.") at 3.  Stewart argued that a jury should not have convicted Corniel because Rodriguez, the only witness to the crime, gave "conflicting, confused and sometimes downright dishonest testimony."  **Id**.  The judge denied the motion.  **Id**.  Stewart then asked the court to sentence Corniel to the minimum, seven years, and to recommend that the time be served in a facility with mental health care.  **Id**. at 10.  Stewart also argued that information regarding an unindicted

crime be stricken from Corniel's presentence report because it was not supposed to be there, and could negatively affect his placement in a correctional facility.  **Id**. at 12.  The trial judge struck the information, but sentenced Corniel to eight years in jail.  **Id**. at 15.

### 5.       Stewart's Criminal Prosecution

In 1991, a New York County Grand Jury indicted Stewart on the charge of criminal contempt in the first degree.  Opp'n Mem. at 8.  The charge was based on Stewart's refusal to answer questions before a grand jury regarding the fee arrangement between herself and a former client.  **Id**.  She was offered full transactional immunity for her testimony, but refused in order to protect her former client's confidences.  **Id**. at 12, n. 5.  Stewart's indictment was dismissed by the trial court judge on May 18, 1993, but then reinstated by the Appellate Division on April 8, 1997.  **People v. Stewart**, 656 N.Y.S.2d 210 (App. Div. 1st Dep't 1997).  Leave to appeal to the Court of Appeals was granted on June 12, 1997, **People v. Stewart**, 661 N.Y.S.2d 194 (App. Div. 1st Dep't 1997), but the Court of Appeals dismissed the appeal on February 11, 1998. **People v. Stewart**, 91 N.Y.2d 900 (1998).   Stewart's criminal case was then pending in New York State Supreme Court until March 24, 1999, when she pled guilty to criminal contempt in the second degree.  Opp'n Mem. at 8, n. 4.  Stewart was sentenced to a conditional discharge on April 22, 1999.  **Id**.

### B.       Procedural Background

Corniel appealed his conviction, which was affirmed by the Appellate Division on September 25, 2003.  **People v. Corniel**, 764 N.Y.S.2d 626 (App. Div. 1st Dep't 2003).  On appeal, he raised four claims: 1) he was denied effective assistance of counsel because of his

counsel's conflict of interest; 2) his conviction was against the weight of the evidence; 3) the court violated his fundamental right to present a defense by excluding a witness; and 4) his sentence should be reduced in the interests of justice. Declaration in Opposition to Petition for a Writ of Habeas Corpus, Kimberly Morgan, July 29, 2004 ("Morgan Decl."), Exh. A at 3-4. Adopting the reasoning in **Skinner v. Duncan**, 2003 WL 21386032 (S.D.N.Y. June 17, 2003), the court rejected Corniel's conflict of interest claim. **Corniel**, 764 N.Y.S.2d at 626. In denying his other claims, the court found that the verdict was not against the weight of the evidence and the trial court's preclusion of a defense witness was not an "improvident exercise of discretion." **Id**. The court did, however, unanimously modify Corniel's sentence, in the interests of justice, and reduce it to seven years. **Id** Leave to appeal to the New York Court of Appeals was denied on January 28, 2004. **People v. Corniel**, 1 N.Y.3d 596 (2004).

### III. DISCUSSION

**A.     Threshold Issues**

**1.     Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court. **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001) (*quoting* **Ross v. Artuz**, 150 F.3d 97, 98 (2d Cir. 1998)). Corniel's conviction thus became final on April 27, 2004. The *Pro Se* Office in this District received Corniel's initial habeas petition on April 5, 2004, and it is therefore timely.

### 2.      Exhaustion

Generally, a federal court may not consider a petition for habeas corpus unless the

petitioner has exhausted all state judicial remedies.  ***See*** 28 U.S.C. § 2254(b)(1)(A).  The

exhaustion doctrine requires a habeas petitioner challenging a state conviction on federal grounds

to have presented his or her claims to the state courts first.  ***See* Daye v. Attorney Gen.**, 696 F.2d

186, 191 (2d Cir. 1982) (***en banc***), ***cert. denied***, 464 U.S. 1048 (1984).  The claim must not only

be presented to the state courts, but the state courts must have notice of the federal nature of the

petitioner's claim.  **Id**. at 191.  A petitioner may give such notice by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

**Id**. at 194.  Corniel's claim was presented to the state courts on direct appeal.  The federal nature

of his claim was asserted in sufficient terms to "call to mind" the protections of the United States

Constitution.  **Id**.  Therefore, his claim has been exhausted.

## B.      Merits of Corniel's Claim

### 1.      Standard of Review

The AEDPA constrains a federal habeas court's ability to grant a state prisoner's

application for a writ of habeas corpus with respect to claims adjudicated on the merits in state

court.  The Act limits issuance of the writ to circumstances in which the state adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C.

§ 2254(d)(1); *see* **Williams v. Taylor**, 529 U.S. 362, 412 (2000).  A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  **Williams**, 529 U.S. at 413.  Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

### 2.      Ineffective Assistance of Counsel Claim

Generally, to prevail on a claim that assistance of counsel was constitutionally ineffective, a petitioner must satisfy the two-pronged test articulated in **Strickland v. Washington**, 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient."  **Id**. at 687.  The proper standard for attorney performance is that of reasonableness under prevailing professional norms and circumstances.  **Id.** at 689.  Second, the petitioner "must show that the deficient performance prejudiced the defense."  **Id**. at 687.  This requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  **Id**. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  **Id.**

In ineffective assistance claims premised upon a conflict of interest, however, the Supreme Court has articulated a different governing standard.  **Cuyler v. Sullivan**, 446 U.S. 335 (1980).  In **Cuyler**, the Court held that the mere "possibility of conflict is insufficient to impugn a criminal conviction."  **Id**. at 350.  Instead, to demonstrate a violation of Sixth Amendment

9

rights, a petitioner must establish that "an actual conflict of interest adversely affected his lawyer's performance."  **Id.**  An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests "diverge with respect to a material factual or legal issue or to a course of action."  **Winkler v. Keane**, 7 F.3d 304, 307 (2d Cir. 1993) (*citing* **Cuyler**, 446 U.S. at 356 n. 3).  Under such circumstances, the defendant need not establish prejudice, as required under the **Strickland** standard; an actual conflict of interest is enough.  *See* **Narvaez v. United States** 1998 WL 255429 at *3 (S.D.N.Y. May 19, 1998).

### a.    Actual Conflict of Interest Standard

Corniel claims that he was denied his constitutional right of effective assistance of counsel because Stewart was being prosecuted by the Manhattan District Attorney's Office while simultaneously representing Corniel in a case brought by that office.  Corniel asserts that this created an actual conflict of interest that violated his "'Sixth Amendment right to . . . conflict-free counsel,'" **United States v. Schwarz**, 283 F.3d 76, 90 (2d Cir. 2002) (*quoting* **United States v. Blau**, 159 F.3d 68, 74 (2d Cir. 1998)), and, therefore, his case should be analyzed under the **Cuyler** standard.  To succeed under **Cuyler**, Corniel must show that Stewart was actively representing conflicting interests, and that this conflict adversely affected her performance.  *See* **Burger v. Kemp**, 483 U.S. 776, 783 (1987).

### (1)    Actual Conflict

Corniel makes two arguments concerning actual conflict.  First, he contends that the case law clearly establishes that an actual conflict exists "when an attorney is facing pending charges

in the same jurisdiction as the defendant he represents."  Reply Memorandum In Support of Petition For a Writ of Habeas Corpus ("Pet. Mem."), at 8.  This Court does not agree.  First, as with all habeas claims, Corniel must establish that the state adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . "  28 U.S.C. § 2254 (d)(1).  There is no Supreme Court precedent establishing that a pending prosecution in the same jurisdiction is an actual conflict.  Therefore, the Appellate Division's denial of Corniel's claims was not an unreasonable application of federal law.  Second, the Second Circuit has held that "[p]rosecution or investigation by the same office, standing alone, . . . is not grounds for finding an actual conflict."  **Skinner v. Duncan**, 2003 WL 21386032, at *43 (S.D.N.Y. June 17, 2003) (*citing* **United States v. Armienti**, 313 F.3d 807, 814 (2d Cir. 2002)).  Therefore, while prosecution by the same jurisdiction could give rise to "a plausible claim [of] . . . an actual conflict of interest," it is not automatic.  **Armienti**, 313 F.3d at 814, 824-25.

Second, Corniel argues that his and Stewart's interests "diverge[d] with respect to a material factual or legal issue or to a course of action" so as to create an actual conflict.  **Winkler**, 7 F.3d at 307.  Corniel alleges that the ongoing prosecution of Stewart caused her to pursue a strategy other than the one that was in Corniel's best interests.  Pet. Mem. at 10.  He claims that, in an attempt to "obtain the benefit of good will" from the prosecutors for herself, Stewart pursued a "less than zealous advocacy."  **Id**. at 7, 10.  The Court finds this to be an untenable position.  Stewart was facing criminal prosecution because of her commitment to her clients and their right to privileged communications with her.  Opp'n Mem. at 12.  She could

have accepted the prosecution's offer of transactional immunity and agreed to testify, but she

chose not to.  **Id**. at 12, n.5.  The context of Stewart's criminal charges undermines the assertion

that deficiencies in her representation of Corniel, if any existed, were the result of her attempting

to put her own interests above those of her client.  Under either of the theories he advances,

Corniel has failed to demonstrate that Stewart's ongoing criminal prosecution created an actual

conflict.

**(2)      Adverse Effect on Representation**

Even assuming that an actual conflict did exist, Corniel's petition still fails because he

does not demonstrate that there was an adverse effect on Stewart's representation of him.  An

actual conflict must give rise to a "lapse in representation."  **Cuyler**, 446 U.S. at 349.   While the

Supreme Court has not defined this in specific terms, it has held that the effect of the conflict

must be significant and adverse.  **Mickens v. Taylor**, 535 U.S. 162, 173-74 (2002).  Corniel

alleges that Stewart's conflict of interest caused her to pursue a "less than zealous" defense.  Pet.

Mem. at 10.  Specifically, he alleges that: 1) Stewart's opening statement was perfunctory and

did not mention the "obvious weaknesses and shortcomings in the prosecution's case;" 2)

Stewart did not confront Rodriguez with her statement about the robber's skin tone; 3)

Stewart failed to put on a defense; 4) Stewart failed to object to a series of improper statements made by

the prosecution in the closing statement; and 5) Stewart did not have the case detective, Richard

Fasano ("Fasano"), testify because of pressure from the government.  **Id**. at 10-11.

Corniel argues that a lapse in representation is established by a showing that a valid

alternative defense strategy existed, and that it was not pursued because of the actual conflict of

12

interest.  **Id**. at 6.  This is not a correct statement of the law.  While the Second Circuit has

adopted the above test, **Winkler v. Keane**, 7 F.3d 304 (2d Cir. 1993), "[o]ther circuits have held,

to the contrary, that in order to prove an adverse effect, petitioner must show that the foregone

strategy was 'objectively reasonable.'" **Skinner**, 2003 WL 21386032, at *46 (*quoting* **Mickens**

**v. Taylor**, 240 F.3d 348, 361 (4th Cir. 2001)).  Since the Supreme Court has not ruled on the

issue, and there is a split within the circuits on the appropriate standard, the alternative theory test

is not clearly established federal law.  "Under AEDPA . . . the question is whether the state

court's decision unreasonably applied *Supreme Court* precedent; '[a] petitioner cannot win

habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit

precedent.'" **Skinner**, 2003 WL 21386032, at *46 (emphasis in original) (*quoting* **Yung v.**

**Walker**, 296 F.3d 129, 135 (2d Cir. 2002)).  Therefore, the Appellate Division's determination

that the above allegations about Stewart's representation of Corniel did not rise to the level of a

lapse in representation is not contrary to, or an unreasonable application of, Supreme Court

precedent.

### (3)     Presumption of Prejudice

        In **Cuyler**, the Supreme Court's held that "a defendant who shows that a conflict of

interest actually affected the adequacy of his representation need not demonstrate prejudice in

order to obtain relief."  446 U.S. at 349-50.  This presumption of prejudice is established federal

law.  However, this presumption has not been extended beyond the context of "multiple

concurrent representation," where the conflict arises out of one lawyer's representation of

multiple clients facing the same charges.  **Mickens**, 535 U.S. at 174-75.  This Court finds that

13

application of the **Cuyler** presumption of prejudice to conflict of interest cases other than those involving multiple concurrent representation, such as the one presented by Corniel, is not clearly established federal law.

Even if this Court were to assume that the **Cuyler** prejudice presumption does apply in this case, Corniel's petition fails on a second ground.  Even under **Cuyler**, prejudice will be presumed only when a petitioner has shown that "a conflict of interest actually affected the adequacy of his representation."  446 U.S. at 350.  Corniel fails to offer any evidence that it was the purported conflict, Stewart's desire to receive preferential treatment from the prosecution in her own case, that was the cause of her alleged deficiencies.  Corniel states that Stewart's opening statement was perfunctory, and failed to discuss the weaknesses in the prosecution's case.  Pet. Mem. at 10.  Stewart's opening did in fact highlight the weaknesses in the prosecution's case, and set up a misidentification defense.  **Id**. at 107-10.  She urged the jurors to pay close attention to the discrepancies in Rodriguez's testimony, and potential influences that led her to identify the wrong man.  **Id**. at 108-09.  Therefore, even if Stewart's opening was less than "zealous," there was nothing in it that implied an attempt to bow to the wishes of the prosecution.  In fact, there is nothing in Corniel's recitation of Stewart's failures that is directly tied to the alleged actual conflict except his claim regarding her failure to call Fasano.  Corniel asserts that Stewart's decision to not call Fasano was "not an independent decision arrived at by . . . Stewart in the best interest of the petitioner, but rather in response to pressure from the prosecutor not to call Fasano as a witness."  Pet. Mem. at 11.  The trial transcript shows that the trial judge inquired of Stewart on the record if she was planning on calling Fasano, and she

14

responded that she had a "long talk" with Fasano and was not going to call him.  S/VD Tr. at

115.  Corniel offers no support for his allegation that Stewart's decision not to call Fasano was in

response to government pressure, nor does he explain what that government pressure was or

when it occurred.  Because Corniel fails to demonstrate that Stewart's alleged shortcomings are

related to the actual conflict, he cannot take advantage of the presumption of prejudice

established in **Cuyler**.  *See* **Skinner**, 2003 WL 21386031 at *46; **Moseley v. Scully**, 908 F.

Supp. 1120, 1142 (E.D.N.Y. Nov. 10, 1995) (no evidence that attorney's failures were in conflict

with attorney's other interests); **United States v. Bruce**, 89 F.3d 886, 896 (D.C. Cir. 1996)

(finding that, "if the attorney's alleged shortcoming is utterly unrelated to the conflict, the

defendant cannot make use of the **Cuyler** presumption of prejudice and must instead proceed

under **Strickland**").

### (4)    Prejudice Standard Under **Strickland**

Under **Strickland**, Corniel must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."  466

U.S. 668, 694 (1984).  Because he cannot show that the state court's decision was contrary to

**Strickland**, the argument that his right to effective assistance of counsel is not grounds for relief,

and this Court recommends that the petition be denied.

### IV. CONCLUSION

For the foregoing reasons, I recommend that Corniel's petition for a writ of habeas corpus

be **DENIED**.  Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten

(10) days after being served with a copy of the recommended disposition to file written

objections to this Report and Recommendation. Such objections shall be filed with the Clerk of

the Court and served on all adversaries, with extra copies delivered to the chambers of the

Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to the chambers of the

undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals.

*See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human**

**Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp.

1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: April 11, 2007**
**New York, New York**

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**
Petitioner
John Corniel
60 Baruch Drive, #8C
New York, NY 10002

Counsel for Petitioner
Edward D. Milford, Esq.
20 Vesey Street, Suite 400
New York, NY 10007

Counsel for Respondent
Luke Martland
Assistant Attorney General
State of New York

16

Office of the Attorney General
120 Broadway
New York, NY 10271